Please be quiet. Please do not talk. Mr. McIntosh? My thanks to this court. My thanks to Widener Law School. My name is Todd McIntosh, Registration 18899 here from the state of Colorado. Welcome to this court from the Colorado Bar. Mr. McIntosh, clear something up for me. This is one of those things that I have not seen. In the Statement of Facts, it says on June 1, 2005, the Forest Service issued a special use permit. Then on January 31, 2007, Ranger Lloyd modified the priority use and determined that Winterhawk's permit to operate the Big Springs Base Camp terminated on May 31, 2001. No, that's what it said. I apologize. Oh yes, actually, that's what Ranger Lloyd said. So he said it retroactively? Is that what it is? Well, what he said was that they hadn't had right to use it since 2001. I can see where that would be very confusing. I thought it might be. Right, and so then in 2007, Ranger Lloyd then said, you really couldn't have been using this as a priority use camp since 2001 and therefore I'm taking it away. Which, as we argued, we felt like was not an appropriate act on his part. Even if we agreed with you that there's jurisdiction in this case, wouldn't you have a problem with failure to state a claim given the clause in the contract that says that no damages are recoverable? You bet I have a problem with that, Your Honor, and I've had to look at that really hard. And my answer to that would be on a number of different levels. One, first and foremost, there's an implied covenant of good faith and fair dealing on the part of the government when it enters into a contract with any party. And with respect to this particular issue, Ranger Lloyd, it's not that he procedurally did everything correctly and that he made a decision that we found to be substantively incorrect. He never did anything he was supposed to do. He simply revoked essentially half of Winterhawk's livelihood. Big Springs Camp was almost half of the entire revenue for Winterhawk. Doesn't that duty of good faith and fair dealing trump when the document says, hey, this is not a contract? That's pretty clearly stated. Well, but it's two different issues. If I could just finish answering Judge O'Malley. So with all due respect, if I can do that, since procedurally nothing was ever done and substantively there was never a decision made other than the illegal revocation, my argument would be that the agreement itself certainly contemplates the parties acting in good faith and reasonable reliance upon one another. But the language, and you actually quote the wrong clause in your brief, section E here on page 828 says, revocation or suspension of this permit shall not give rise to any claim for damages by holder against the Forest Service. And then F says termination of this permit is not subject to administrative appeal and shall not give rise to any claim for damages. So those are two provisions. I think F is the termination provision, Judge, is that correct? Yeah. Well, the second part of the answer would be that if we were to assume... The language is pretty clear, is it not? I don't think that you can read it in a vacuum that it only has... But on its face it's clear, is it not? On the face within that paragraph it is clear, yes, Your Honor. Within the contract, yeah, or within the document because they say it's not a contract. And it's talking about revocation or suspension pursuant to the contract. So as I understand your argument then what you're saying is that, yes, it says no right to damages, but that presupposes that when the government operates under the contract they don't go way off the reservation in terms of causing damages, that they're not so bad? No, no. I don't think I could be standing here today making argument if Ranger Lloyd had provided a notice and an opportunity to cure and made a decision that was wrong, all right, and then Winterhawk appealed it and reversed it. I don't think I could stand here today and argue, not with a straight face. What I am saying is that Ranger Lloyd never did anything that he was supposed to do under the terms of that contract. He never did anything upon which Winterhawk was relying if Winterhawk's conduct rose to the level that some sort of suspension or revocation needed to be made. You cannot simply carte blanche say, regardless of what we do, here, we're going to give you this camp and you're going to invest hundreds of thousands of dollars and the very day you open we're going to close it down. Well, it's not as though it's a surprise you knew about these provisions when you agreed to the permit, right? Well, Your Honor, we did, and respectfully I think that those provisions would apply to when a revocation is done pursuant to the terms and conditions of the agreement. Well, if it's done pursuant to the terms and conditions of the agreement, then there's no violation of the agreement. I would agree with that, absolutely. I wouldn't be standing here. Can an agreement such as this be terminable at will? It could be. This particular one was not. I don't think that the language provides that it was terminable at will unless the only reason why it could have been terminated would have been in the interest of public safety, which is the last provision under revocation. But the termination language, if you look carefully at the termination language, it is different than the revocation and suspension language. And then the other part of my argument, Judge O'Malley, is that if we assume arguendo that this is a license under 5 U.S.C. 558, if a license is provided by the government to a party, that party is provided the opportunity for notice and an opportunity to comply with any deficient act. But 558 is not a money mandating provision, and you didn't rely on it as a money mandating provision, right? Well, my argument would be that... Correct? Correct. But my argument would be, Your Honor, that it's implied in the terms if this were a license, which I don't think it is, first of all. And secondly, the language is very clear in 558 that in order for it to be a lawful revocation or suspension. Here, he didn't do either. And therefore, they're taking advantage of an unlawful act in order to say, hey, we didn't act lawfully in this particular instance, but we're going to go ahead and say that because we didn't act lawfully and revoke the terms and conditions, that you can't seek damages. I don't see how in any world that that's a fair outcome when we take into consideration that there are implied covenants of good faith and fair dealing. So are you saying that the provision is unconscionable? No. The provision about revocation? About damages. I do not think it would be unconscionable if, in fact, they had complied with the terms of the agreement prior to doing a revocation. I don't think I'd be standing here today. What point would the provision have if they complied with the agreement? The no damages provision only can be meaningful if there's been some violation of what you say is an agreement. I'm sorry, Judge. What is the point of the damages provision if it's only addressed to situations when there's been no violation of the agreement? Oh, no. No. I'm sorry if I'm not making myself clear. What I'm saying is if Winterhawk had violated a term or condition of this special use permit and had noticed You're talking about the government violating the agreement. The government is trying to protect itself from damages for potential violations of the permit. I got you, Judge. And what I'm saying is that I don't think the government can protect itself when it acts unlawfully with respect to the very act that it's seeking to protect. Well, why not? I mean, in our Holmes case, we specifically recognize that if an agreement says no damages, that means no damages. Well, the Holmes case is referencing a criminal case for the most part, Your Honor. And certainly, if there is a disavowalment of damages within an agreement and the parties comply with the terms of that agreement procedurally and then even if substitutely they come up with a decision that we might consider erroneous, I couldn't be standing here today. But when the Congress says that in order for a revocation or suspension to be lawful, certain things have to be done, the government certainly, I mean, there's got to be an awareness that they have to act lawfully in order to do what they're going to do. They can't protect themselves from damages liability. They can't limit you to an administrative remedy? They could, but they didn't, Judge. Well, why not? I mean, that's the problem. The language is pretty broad. Well, they didn't limit us to an administrative review because the code says that after upon a full exhaustion of administrative review, we can seek judicial review. So they didn't limit us. Well, I don't think they're contending that you couldn't get judicial review of the Forest Service decision if it had been adverse. They're just saying you can't get damages and that's what the provision says. I know, Judge, and, you know, I mean, obviously I've beat my head about several walls thinking about this particular issue, but at some point, at some point, regardless if you're the government or any other party, if you say you're going to do certain things and you don't do them, you can't then say, well, because I said there'd be no damages, I can simply just, sorry, you've got to toss in the towel. I think what you're saying, in essence, is equitable, and that sounds like you're asserting estoppel against the government, and, of course, you can't do that. Well, of course we can't do that, but I'm talking about implied covenants of good faith and fair dealing, which, of course, certainly is married to equitable principles. But what outfitter, what entity in the world would enter into a contract with a party and the party says, hey, you know, we're not going to comply with any of the terms and conditions with respect to a revocation or suspension here, or we may or we may not, but in any event, whether we do or we don't, you can't sue us for damages. You can't rely upon any part of this document. You can't sue for damages, but you have an administrative remedy and then potential judicial review under the APA after that. It's not as though you're without a remedy. Well, except, Judge, in this particular instance, because there wasn't a note, I wouldn't be, and I had actually reserved five minutes, and perhaps I can reserve about two and a half minutes, I wouldn't be standing here today had Ranger Lowy just done what he was supposed to do. Had he given the notice and the right to cure, I wouldn't be here. Yeah, what you're saying is that you lost goodwill. I'm saying good faith and fair dealing. No, no, I'm saying that your client lost goodwill. My client lost all their hunters. I mean, I'm not a hunter. I take pictures. I fish. I don't even kill the fish, but yeah, I throw them back in. But what I'm saying and what factually occurred was these hunters, these guys are married to these areas, and when this permit was pulled out from under Winterhawk, these guys went out to other places, and they have not come back, and this was half of Winterhawk's business. I mean, it wasn't a matter of, hey, we're out for a year, guys, but now we're back in. They were gone, and not only that. You followed your administrative remedy, and you got your permit back, but by then it was too late. By then it was too late because of an unlawful act of the government, and Congress said it was unlawful if we assume that Ms. Lynch's argument is correct that it's a license, which I'm really upset that I couldn't argue because I have a lot of great argument on that, but if I can please reserve a couple of minutes for rebuttal. You can reserve the rest of your time. Thank you. Thank you, Judge. Ms. Lynch. Good afternoon, Your Honors. May I please the Court? The trial court here properly concluded that it lacked jurisdiction to entertain Winterhawk's claim. Therefore, we respectfully request this Court affirm the trial court's dismissal of this case for lack of jurisdiction. Well, listen, and we'll get back to that in a minute, but it is pretty unfair what happened here. I mean, you have to concede that the way they were treated was completely inappropriate and a complete breach of the contract, which is why they got the permit back, right? Well, Your Honor, as an initial matter, we do not believe that this is a contract. This agreement is a license. The breach of the license. The license provided for exactly the remedy that Winterhawk availed itself of, not only the provisions that Your Honors have referenced, but there's also on page A22 of the appendix that was filed with Winterhawk's brief. It specifically states that the benefits and requirements conferred by this authorization are reviewable solely under the procedures set forth in 36 CFR Part 251 and 5 U.S.C. 704. So it provides for administrative remedies followed by review pursuant to the administrative procedure. Everything that occurred before they went to their administrative remedies were complete breaches of the contract and were done, it was ultimately determined, were done all inappropriately, correct? Again, this is a license that, yes, Your Honor, it was done under, not without the notice that was provided for in this agreement, in this license. So I get a license from the government, I invest all of this money, the government is completely free to do whatever it wants to essentially destroy my business and then say, oh, you've got an administrative remedy later, we'll just give it back to you and all the harm caused in between you have to walk away from. Yes, Your Honor, this is precisely the agreement that Winterhawk signed up to when they entered into this, when they signed this permit with the government. Does the government do that a lot with guides and hunters? Does the government do this? Yeah, do they leave them hanging out and sign one of these, I won't call it a contract, it's an agreement, but they sign up, they invest, they start building their business and then the government says, hey, you're not allowed to do this anymore and later on say, geez, we're really sorry, go find yourself some more hunters, you've got the area again, does that happen a lot? Well, Your Honor, I would like to think no, it does not, but again, this is the agreement that Winterhawk and other parties in these types of licenses, this is what they sign up to. It's plain on the face of the permit exactly what it says, the damages are limited, there are no damages available, the remedies that you may avail yourself of are the exact remedies that Winterhawk availed itself of and received the permit in return, their Big Springs Camp. And regarding the substantial investment point, this permit in particular states that there can be no substantial investment, there can only be improvements of negligible value, things like hitching posts and corrals and everything like that. And they're not allowed to, for example, spend all that money on advertising, which they did. They can do that, but there are other aspects to Winterhawk's business, not simply this Big Springs Camp, so that's transferable, it is not site specific in this particular kind of a case. With respect to your jurisdictional argument, as I understand our case law, it says that sometimes the permit, even if it's called a permit, can be deemed a contract and so we've got to do a merits-based analysis of the documents, the party's relationship, et cetera, to determine whether it's a permit or a contract. So doesn't a fair allegation that the particular permit constitutes a contract give rise to jurisdiction? I mean, isn't your argument really that it doesn't state a claim given the terms of the agreement? Well, Your Honor, again, it's an allegation that something is a contract if on its face it disavows the fact that it's a contract, we still maintain that it is a lack of jurisdiction. But you kept calling it earlier in the argument an agreement. It's not the stuff you think it's an agreement. Permits, I should be saying permits, Your Honor. Well, it's an easy mistake because it looks kind of like an agreement. And in the King case, I mean, did the government argue that this was a special use permit? But as I understand it, it was an agreement, and when the permittee violated the license or agreement or whatever it is, you sued them, right? Well, in that case, Your Honor, that's quite distinguishable from the case that we have here. As an initial matter, the permit in the King case involved a permit issue pursuant to the Term Permit Act. The permitted issue here was issued under the Federal Lands Recreation and Enhancement Act. What's the difference? There are two different acts. The Term Permit Act, very specifically, is designed to protect that substantial investment. It's designed for terms of over 30 years for hotels, recreation facilities, or as was the case of King for small summer homes. So that is the idea is that you have a substantial investment, you have a resort property, you have a summer home. That is why the Term Permit Act has been often read to be a contract. Permits issued pursuant to the Term Permit Act are often considered contracts. On the other hand, what we have here, a permit issued under the Federal Lands Recreation and Enhancement Act, is simply a way for a party to come onto government land, to use government land, and then the government just tells what the rights and responsibilities of each party are regarding the use of that land. There are, again, no permanent improvements of any kind are permitted. So there's a distinct difference between the permit that was at issue in King and the permit at issue here. If we disagree with you on jurisdiction, do we have to send it back? No, Your Honor. Again, because this particular permit expressly disavows money damages in the portion that I just read to you and also the portions of the permit that Your Honors have referenced earlier, the termination revocation provisions, because there is no ability to have damages, then there is absolutely no jurisdiction in this court. As both Holmes and Rick Mushroom say, you need to have an express contract that provides for money damages. In the absence of the money damages, there is no jurisdiction here. We respectfully request, Your Honor. Anything further? Nothing, Your Honor. Thank you. Okay. Thank you. Mr. McIntosh. Of course, I'm kidding, but if I could have her time, that would be great. Well, unfortunately, it doesn't work that way. Maybe it's the Congress. You don't get a no until you ask, right? First of all, very briefly, with respect to whether or not this is a license, if you look at the federal code that provides special use authorization for these special uses in forest land, there are four terms that are provided. Permit, term permit, easement, or a lease. There is nothing about a revocable license that says the Forest Service can provide a revocable license that would grant the special use authority for our forest lands. Could they have done it parallel? That is, could the Forest Service and somebody else can use this, too, at the same time? Well, yes, the agreement says they can to a certain degree, but they say that before we're going to let anybody else do this, we're going to all meet as parties and discuss it. So there is an exclusivity provision with respect to this, that before they're going to let anybody else come on and use these lands, they're going to all sit down and have a meeting about it. It's not saying that we're going to let you have this permit. But it's in their power to do it, isn't it? I beg your pardon? It's in the government's power to do that. Well, contractually, the parties agreed that they could do that. You bet. So I would respectfully disagree that this is a license, and I would also say that there's a plethora of case law, although I didn't cite it in my brief, that says a license can be a contract. There's nothing that says a license cannot be a contract, and there's a number of cases out there that say that. The other thing, too, that Ms. Lynch said that I have to take umbrage with is that the advertising and the other issues with respect to this camp, when this camp left, so did the hunters. They didn't go over to the Indian Cliffs Camp, which is a beautiful camp that overlooks a gorgeous river, because there aren't any mountain lions there. They hunt mountain lions, which I would hate to do. Please understand. And they simply can't go to the other camp. It would be a 65-mile walk simply to get there. I suppose I think the core problem, from my view, is that a contract requires a meeting of the minds. And in this instance, to have a meeting of the minds on this, you have to deal with the fact that they say you can't get any damages from us. But it doesn't say you can't get any damages from us and we can act unlawfully and we can still assert you can't get any damages. And that's within the same paragraph that discusses the revocation and the suspension procedures within the agreement. Who would enter into an agreement like that? Nobody would. I think Mr. McIntosh, we're out of time. Thank you very much. I'd like to thank the court for its time. Thank you very much. We thank both counsels.